# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**HAWK TECHNOLOGY SYSTEMS, LLC,**

    **Plaintiff,**

**v.**                                                       **Civil No. 4:20-cv-184-DMB-JMV**

**HUDDLE HOUSE, INC.,**

    **Defendant.**

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STAY

Before the Court is Defendant Huddle House, Inc.'s ("Huddle House") motion to stay this case pending the completion of proceedings in a related matter pending in the United States District Court for the District of Nevada, *DTiQ Technologies, Inc. v. Hawk Technology Systems*, LLC, Case No. 20-2050 ("Nevada action"). Plaintiff Hawk Technology Systems, LLC ("Hawk") opposes the motion. For the reasons that follow, the Court will grant the motion in part and temporarily stay these proceedings.

On October 21, 2020, Hawk filed its complaint against Huddle House in this Court, alleging that it infringes the claims of U.S. Patent No. 10,499,091 ("'091 Patent") by using the video surveillance system services of DTiQ. Hawk does not allege that Huddle House makes, sells, offers for sale, or imports any products that allegedly perform the method claimed in the '091 Patent. According to the complaint, Hawk's allegations of patent infringement are based on Huddle House's use of DTiQ's surveillance system technology as a customer. Hawk's complaint includes a patent claim chart as Exhibit C that purports to set forth Hawk's infringement

allegations. However, as Huddle House points out, the claim chart and the allegations therein are directed at only DTiQ's documents, information, and website, and allege nothing against Huddle House.

After it learned Huddle House was being sued based on allegations that DTiQ's technology and services infringe the '091 Patent, on November 6, 2020, DTiQ filed the Nevada action seeking a declaratory judgment that DTiQ's products and services do not infringe the '091 Patent and that certain claims of the '091 Patent are invalid.

By the instant motion, Huddle House argues that because it "is merely a customer and end-user of the video surveillance system technology of DTiQ, this case falls under the customer-suit exception and should be stayed pending the resolution of the DTiQ Lawsuit." Huddle House also argues that the traditional standard for staying federal cases, when applied to the circumstances of this case, likewise counsels in favor of a stay. The undersigned agrees with both arguments.

**Customer Suit Exception**

Huddle House argues the customer suit exception to the first-filed rule should be applied to stay this case. Hawk, on the other hand, contends the customer suit exception does not operate to stay customer lawsuits when "method" patent claims are at issue. Specifically, Hawk contends Huddle House, by using the DTiQ technology is directly infringing its method patent. Having considered the submissions of the parties and the applicable law, the undersigned is persuaded that on the record before the Court, the customer suit exception fits the allegations made in the complaint.

When cases "involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation." *In re Google Inc.*, 58

Fed. App'x 988, 990 (Fed. Cir. 2014) (citation omitted). Courts normally give precedence to the first case that is filed. The customer suit exception promotes the interest of judicial economy and in certain patent cases overrides operation of the rule that favors the forum of the first-filed action. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (stating that the customer suit exception is a "narrow exception to the first-to-file doctrine"); *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) ("The customer suit exception is an exception to the general rule that favors the forum of the first-filed action.") (citations omitted). Pursuant to the customer suit doctrine, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer" because "in reality, the manufacturer is the true defendant in the customer suit." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). It also "is based on the premise that the manufacturer is in the best position to litigate infringement claims because it has access to all of the relevant technical and proprietary information relevant to an infringement action." *Chia-Ling Huang v. Lowe's Home Centers*, No. 2:18-CV-10545 SJO (JEM), 2019 WL 9997346, at *2 (C.D. Cal. Aug. 8, 2019). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Eastman Kodak*, 657 F.3d at 1357 (citation omitted).

      Hawk argues for inapplicability of the customer suit exception based on authorities, it contends, support the conclusion that the exception is inappropriately applied in cases where the customer is a direct infringer of a patented method.[1] First, the cases presented by Hawk are

---

[1] Hawk, among other things, also makes much about the fact the claims in this suit are not "identical" to the claims in the Nevada action. However, beyond conclusory statements Hawk makes no colorable argument that resolution of the Nevada action would <u>not</u> resolve substantially—if not all—claims against Huddle House in this action.

distinguishable and not persuasive.[2] Huddle House, on the other hand, has presented several cases (more aligned with the facts of this case) where courts have entered stays notwithstanding allegations of direct infringement of a patented method by a customer where the concurrent suit involving the manufacturer promised to resolve major issues in the customer suit. *See, e.g., Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 2:12-cv-00003, 2013 WL 1099754, at *5 (D. Me. Mar. 15, 2013) (staying a customer suit alleging direct infringement of a method claim as a result of using software developed by another company); *Card Activation Techs. v. Pier 1 Imps.*, Inc., No. 09 C 2021, 2009 WL 2956926, at *3–4 (N.D. Ill. Sep. 14, 2009) (addressing argument that customer-suit exception does not apply to method claims and stating that it is "without merit"); *Ultra Prods., Inc. v. Best Buy Co.*, No. 09-1095, 2009 WL 2843888, at *5 (D.N.J. Sep. 1, 2009) (staying customer suits enforcing method claims in favor of a suit filed by the manufacturer because, even though the manufacturer's suit would not resolve "every conceivable issue," it would likely "resolve the 'major issues' concerning the claims against the customer," that is, "the threshold questions of patent validity, enforceability, and construction") (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.1990)). Ultimately, it appears that DTiQ is in the best position to litigate against Hawk's infringement claims as suggested by Hawk's very own complaint (which contains allegations supported entirely by exhibits of DTiQ related materials), and a stay of these proceedings pending resolution of the Nevada action would serve the interests of efficiency and judicial economy as resolution of that case will likely resolve the major issues in this case.

---

[2] It appears that several courts who declined to apply the customer suit exception in method patent cases did so where the customer was alleged to have been the direct infringer and the manufacturer only an indirect infringer. *See, e.g., Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.*, No. 2:15cv1202-WCB, 2016 WL 1659924, at *3-4 (E.D. Tex. April 26, 2016). Here, Hawk denies no direct infringement on the part of DTiQ and has not convinced the Court that proof of infringement by DTiQ would not necessarily establish liability for infringement by Huddle House.

**Traditional Stay Standard**

The Court finds it should also stay this action pursuant to traditional stay considerations. It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to issue a stay in a case is based on the court's sound discretion and basic principles of equity, fairness, efficiency, and conservation of judicial resources. In exercising this discretionary authority, courts "must weigh competing interests and maintain an even balance." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (citation omitted). Balancing these competing interests calls for a court to consider three factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party[;] (2) whether a stay will simplify the issues in question and trial of the case[;] and (3) whether discovery is complete and whether a trial date has been set." *Peavey Elecs. Corp. v. Music Grp. Servs. US, Inc.*, No. 3:13-CV-934-HTW-LRA, 2014 WL 12323520, at *2 (S.D. Miss. Mar. 10, 2014) (citing *Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660 (E.D. Tex. 2005)).

In this case all factors weigh in favor of a stay. First, Hawk has failed to prove any real prejudice in the form of delay tactics on the part of Defendant. Moreover, Hawk's suggestion that a stay would prejudice it because it seeks damages from Huddle House in this action, a claim not asserted in the Nevada action, is unavailing because a stay of this case will not deny Hawk any recovery. Instead, staying this case in favor of the Nevada action will likely lead to efficient resolution of this case. And as set out below, the Court intends to limit the stay so as not to inordinately delay these proceedings.[3] So, while a stay of these proceedings might temporarily

---
[3] Even Hawk acknowledges that "a stay of limited duration of this matter may be proper in circumstances wherein it is finite and geared to the promotion of judicial effectiveness and judicial efficiency."

delay Hawk's ability to seek damages from Huddle House, it will by no means cut it off (to the extent any issues remain to be decided once the stay is lifted).

Second, the undersigned finds that resolution of the Nevada action will likely resolve most, if not all, of the main issues in this case, and Hawk has failed to convince this Court otherwise. And consistent with the discussion regarding the customer suit exception above, a determination in the Nevada action that DTiQ's services and technology does not infringe the '091 patent or that the patent is invalid will likely resolve or greatly simplify all the patent infringement claims Hawk asserts against Huddle House here. So, it appears that Huddle House's use of DTiQ's technology can only infringe on the '091 patent to the extent the DTiQ technology is found to infringe on the patent. Hawk has made no colorable argument to the contrary, and the allegations made in its complaint (largely directed toward DTiQ's services and technology) support this conclusion.

Third, while a trial date has been set in this case, the litigation is still in the very early stages as discovery has only just opened.

Finally, a provision of the Nevada scheduling order reads as follows:

> The parties agree that rather than incur further fees and expenses while the motion to dismiss is being decided in the Mississippi case, a prospective potential motion to stay of the Mississippi action is briefed and considered by that court, and the motion for lack of personal jurisdiction before this Court are all actively pending, the parties will be better served by the extension of deadlines for 60 days in anticipation of potential rulings of those motions and consequent added clarity as to how, and where, this dispute should proceed.

Discovery Plan and Scheduling Order 2:20cv02050-RFB-EJY, March 4, 2021, ECF No. 21. Based on this, a ruling in favor of Hawk on its personal jurisdiction motion in the Nevada action would

almost certainly provide grounds to immediately lift the stay requested here. Furthermore, if the district judge in this case grants Huddle House's motion to dismiss,[4] the issue of propriety of a stay may become moot. Accordingly, the undersigned finds it prudent to stay this case until the earliest of 90 days from this date or a ruling on Hawk's personal jurisdiction motion in the Nevada action or a ruling by this Court on Huddle House's motion to dismiss this action, at which time the Court will reassess the propriety of a further stay of this action. The parties are to notify the undersigned within seven (7) business days of any ruling on Hawk's personal jurisdiction motion in the Nevada action or in the event that action is resolved.

    SO ORDERED this 3rd day of May, 2021.

                                      /s/ Jane M. Virden
                                      United States Magistrate Judge

---

[4] On January 21, 2021, Defendant Huddle House filed a Rule 12 Motion to Dismiss Plaintiff's Complaint in this Court [ECF 9], on allegations of ineligible patent subject matter.